METZ LEWIS BRODMAN MUST O'KEEFE LLC

11 Stanwix Street  18th Floor  Pittsburgh, Pennsylvania 15222
T: 412.918.1100  F: 412.918.1199  www.metzlewis.com

August 23, 2011



METZ
LEWIS
BRODMAN
MUST
O'KEEFE

ATTORNEYS AT LAW
GERRI L. SPERLING

The Honorable Joy Flowers Conti
United States District Court
for the Western District of Pennsylvania
700 Grant Street
Pittsburgh, PA 15219

RE:   ***Griffis v. Highmark Blue Cross Blue Shield of Pennsylvania***
      **No. 2:11-cv-00263**

Dear Judge Conti:

I am writing to respond to Attorney Paduano's August 19, 2011, letter to the Court (Doc. 32) regarding his request for a discovery conference and to clarify some apparent misconceptions he has concerning Highmark's positions.

Attorney Paduano incorrectly believes that Highmark has somehow abandoned its request to stay this action simply because Highmark notified Plaintiffs of its intent to serve a subpoena for documents on Wellmark, a third party. That simply is not true. For the reasons explained below, Highmark's subpoenaing Wellmark is neither inconsistent with its motion for a stay nor a "concession" that a stay is inappropriate.

First, Highmark believes its request for a stay was bolstered on August 8, 2011 (after the Court held it July 26, 2011 case management conference), when a federal district court in the Southern District of Florida granted a motion to stay in another case Pharmacy Matters filed in Iowa state court. As detailed in the enclosed opinion, the court in *Brown, Lowe, and T. Zenon Pharmaceuticals v. Blue Cross and Blue Shield of Florida*, Case No. 9:11-cv-80390, found that because "the heart of this dispute in both the Iowa case and in this proceeding is the same: the outstanding payment for Factor treatment," the interests of judicial economy supported staying the Florida case pending the outcome of the "parallel Iowa State Court case." (Opinion at 17; 22.) While not dispositive of Highmark's motion to stay, the *Brown* court's reasoning, when considering an identical motion, is persuasive authority to grant Highmark's pending motion to stay these proceedings.

Second, Attorney Paduano repeatedly states that Highmark somehow "conceded" or "agreed" that discovery is "appropriate" notwithstanding Highmark's motion to stay and its arguments supporting dismissal. These broad statements are incorrect and completely misrepresent the intent and purpose behind Highmark's noticing the subpoena.

At the July 26, 2011, case management conference, the Court directed Highmark to consider whether it would engage in further administrative review of Griffis' claims for benefits and report back to the Court on its decision no later than August 31, 2011. As the Court is aware, Wellmark as the "host Blue Cross Blue Shield plan" determined

August 23, 2011
Page 2

the validity of Griffis' claims.  Highmark requested Wellmark's records concerning Griffis' claims in order to assess the prospects of further administrative review. Wellmark declined to give Highmark these records voluntarily.  In fact, Wellmark's counsel insisted that Highmark issue a formal subpoena for the records because Pharmacy Matters had sued both Highmark and Wellmark in dueling court actions. Highmark's subpoena to Wellmark (in which Highmark seeks the underlying administrative record concerning Griffis' claims) is simply part of Highmark's effort to comply with the Court's direction concerning potential, additional administrative review.

Moreover, there is absolutely no legal basis for Plaintiffs to seek an order "directing" Highmark to notice Wellmark's deposition as part of the subpoena as Attorney Paduano requests in his letter.  Quite frankly, I have never heard of such an unorthodox request.

Finally, Plaintiffs should not be permitted to use Highmark's third-party subpoena to Wellmark to obtain records that are pertinent to an administrative review as an excuse or opportunity to engage in full-blown discovery as to Highmark as Plaintiffs suggest in their letter to the Court.  Attorney Paduano wholly misrepresents that there is an "agreement by the parties that discovery is appropriate" when in fact there is no such "agreement."  Again, Highmark's subpoena to Wellmark was designed to secure the existing administrative record in order to enable Highmark to comply with the Court's direction that Highmark assess the viability of an administrative review.  If Plaintiffs insist on arguing that Highmark's actions have opened the door to discovery, Highmark will renew its motion to dismiss on all grounds, including that Plaintiffs failed to exhaust their administrative remedies.

Highmark is prepared to address these matters at the August 31, 2011 scheduling conference the Court has set for 4:00 p.m.

Respectfully submitted,

Gerri L. Sperling

GLS:al
Enclosure
cc:    Anthony Paduano, Esquire
       Megan Wise, Esquire

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 11-80390-CIV-MIDDLEBROOKS/JOHNSON

CHAD BROWN, ERIC LOWE and
T. ZENON PHARMACEUTICALS, LLC
(D/B/A PHARMACY MATTERS),

        Plaintiffs,

v.

BLUE CROSS AND BLUE SHIELD
OF FLORIDA, INC.,

        Defendant.

_____/

### ORDER DENYING MOTION TO STRIKE AND MOTION TO DISQUALIFY COUNSEL, AND GRANTING STAY IN THIS CASE

THIS CAUSE is before the Court upon Defendant Blue Cross and Blue Shield of Florida, Inc.'s ("BCBSF's") Motion to Dismiss, or in the Alternative, to Stay or Transfer (DE 21) ("Motion to Dismiss, Stay or Transfer"), Motion of Plaintiff T. Zenon Pharmaceuticals, LLC d/b/a Pharmacy Matters ("Pharmacy Matters") to Disqualify Holland & Knight LLP (DE 27) ("Motion to Disqualify"), and Defendant's Motion to Strike Declaration of Jarrett Bostwick (DE 35) ("Motion to Strike"). The motions have been fully briefed and are ripe for consideration. I have reviewed the motions, and the record in this case, and am otherwise fully advised in the premises. As Plaintiffs challenge whether Defendant's counsel may participate in this lawsuit, I will begin by addressing Plaintiff's Motion to Disqualify, and the related Motion to Strike.

### I.  BACKGROUND

This action was commenced on April 12, 2011, when Plaintiffs Chad Brown ("Brown"), Eric Lowe ("Lowe"), and Pharmacy Matters filed suit against BCBSF, alleging

1

violations of Florida Statute § 627.6131, and the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"). According to the Complaint,[1] Plaintiffs Brown and Lowe are hemophiliacs, who require blood-clotting factor treatment ("Factor treatment"). (Compl. ¶ 7). Brown, a resident of Florida, and Lowe, a resident of Indiana, had medical insurance coverage through BCBSF,[2] and timely paid their premiums. (*Id.* ¶¶ 1-2, 7). This action stems from BCBSF's alleged refusal to pay claims submitted by, or on behalf of, Brown and Lowe for covered pharmacy services, specifically the Factor treatment. (*Id.* ¶ 7).

Since March of 2006, Pharmacy Matters, an Iowa limited liability company, has provided specialty pharmacy and health management care coordination services, including Factor treatment, to patients. (*Id.* ¶¶ 3, 7). Pharmacy Matters explains that its business is "akin to other specialty pharmacies and mail order and online pharmacies such as Medco, Caremark and CVS Online." (*Id.* ¶ 9). Pursuant to a July 1, 2008 agreement, Pharmacy Matters contracted with wholesale pharmacy distributor Factor Health Management, LLC ("FHM") to be a non-exclusive distributor of FHM's medicines. (*Id.* ¶ 8). Brown's and Lowe's claims for insurance reimbursement that are at issue in this case were dispensed by Pharmacy Matters pursuant to the agreement with FHM. (*Id.*).

Pharmacy Matters explains that after receiving prescriptions from licensed physicians and confirming pre-certification for insurance payment with the appropriate insurance company, it dispenses the prescribed medicine directly to patients. (*Id.* ¶ 9). In connection with the dispensing of medication to patients, FHM and its contract pharmacies—including Pharmacy Matters—receive an assignment from the patient, enabling them to collect

---

[1] I will accept the allegations in the Complaint as true for purposes of assessing the motions currently before the Court.

[2] Though Plaintiffs do not specifically assert this, the Court presumes that Brown's and Lowe's medical insurance plans with BCBSF are within the ambit of ERISA.

payment directly from the insurance company for services or products rendered. (*Id.*). Brown and Lowe both agreed to such an assignment, thus allowing Pharmacy Matters to recover directly from BCBSF for their Factor treatment payments. (*Id.*, Exs. A & B). However, per the request of the Blue Cross Blue Shield Association, when an insurance carrier (here, BCBSF) is located in a different geographic area than the provider (here, Pharmacy Matters), the provider must submit the claim online to a local Blue Cross Blue Shield affiliate. (*Id.* ¶ 10). Because Pharmacy Matters is an Iowa LLC, it submitted the claims for Brown's and Lowe's Factor treatment to Wellmark, Inc. ("Wellmark")—an Iowa Blue Cross Blue Shield affiliate—to coordinate payment for BCBSF. (*Id.*). These claims remain unpaid. (*Id.*).

Pharmacy Matters states that all Factor treatment services provided to Plaintiffs were "covered services," meaning that Brown and Lowe were entitled to these treatments pursuant to their health insurance plans with BCBSF. (*Id.* ¶ 11). Additionally, to the extent necessary, Brown and Lowe received the required pre-certification before the Factor treatments were dispensed by Pharmacy Matters. (*Id.*). Representatives of both FHM and Pharmacy Matters have made repeated verbal and written requests for payment from BCBSF, but BCBSF has refused to pay the more than $548,000.00 in outstanding claims.[3] Plaintiffs state they have exhausted every avenue available to them to obtain payment from BCBSF, and that Brown's and Lowe's claims have been outstanding for more than sixty (60) days in violation of ERISA. (*Id.* ¶¶ 15-16). As such, they seek to enforce their rights under ERISA, pursuant to 29 U.S.C. § 1132(a)(1)(B), by (1) recovering the benefits due to them under the terms of the insurance plan (Count I), and (2) receiving a declaration of their rights under the plan to

---

[3] Plaintiffs state that $82,363.50 results from one unpaid claim regarding Brown's Factor treatment, and $465,638.22 results from three unpaid claims regarding Lowe's Factor treatment.

establish past and future benefits (Count II). (*Id.* ¶¶ 18-28). Additionally, Plaintiffs seek injunctive relief against BCBSF pursuant to 29 U.S.C. § 1132(a)(3), enjoining BCBSF from denying or placing a hold on a claim unless it is deficient as a matter of law or there is actual evidence of fraud associated with the claim (Count III). (*Id.* ¶¶ 29-31). Finally, Plaintiffs seek relief under Florida Statute § 627.6131 for BCBSF's refusal to pay Brown's and Lowe's claims in a timely manner (Count IV). (*Id.* ¶¶ 32-34).

A case currently pending in Iowa state court (Case No. LACV 070675) (the "Iowa case" or "Iowa litigation") is relevant to the Court's instant analysis. On May 1, 2009, Pharmacy Matters and an individual plaintiff, Shane Kelley, filed suit against Wellmark in Iowa State Court. In the Amended Complaint in that case, Pharmacy Matters and Kelley allege breach of contract (Counts I & II), unjust enrichment (Count III), bad faith (Count IV), and seek declaratory judgment (Count V), against Wellmark for its failure to pay claims for covered services submitted by Pharmacy Matters. The subject claims in the Iowa case are for more than $6.6 million in outstanding payments for Factor treatment, and include Brown's and Lowe's claims submitted by Pharmacy Matters to Wellmark.

## II.    PHARMACY MATTERS' MOTION TO DISQUALIFY COUNSEL

Pharmacy Matters contends that the involvement of Holland & Knight, LLP ("Holland & Knight") in this matter as counsel for BCBSF is improper, due to a conflict of interest in violation of Rule 4-1.9 of the Florida Rules of Professional Conduct, and that Holland & Knight should be disqualified from representing BCBSF in this case. The conflict of interest stems from Holland & Knight's prior representation of FHM and its affiliated companies from 2006 until June 2009. As part of that representation, Pharmacy Matters states that Holland & Knight prepared a comprehensive Regulatory Compliance Audit ("Audit") for FHM. (DE 27-6 at 6). Pursuant to that Audit, Holland & Knight was provided

4

with confidential and proprietary documents relating to FHM's business practices, including contracts that are practically identical to the non-exclusive distribution agreement Pharmacy Matters and FHM entered into on July 1, 2008 (the "Pharmacy Agreement"). (*Id.*). Holland & Knight provided legal advice to FHM regarding the propriety of these contracts, and FHM relied on this opinion in contracting with Pharmacy Matters. (*Id.*). Pharmacy Matters asserts that the propriety of the Pharmacy Agreement will be at issue in this case, meaning that Holland & Knight could be called upon to act a fact witness in this action or in the Iowa case. (*Id.*). Furthermore, because FHM has a lien on all of Pharmacy Matters' rights to payment from BCBSF, including the outstanding payments for Brown's and Lowe's Factor treatment, Pharmacy Matters argues that FHM has a vested interest in the outcome of this action—an interest adverse to that of BCBSF. FHM has not waived the conflict of interest and thus, under Rule 4-1.9, Pharmacy Matters contends that Holland & Knight may not represent BCBSF in this suit. (*Id.* at 6-7).

BCBSF strenuously objects to the disqualification of Holland & Knight, arguing that Pharmacy Matters is improperly attempting to co-opt the attorney-client relationship between FHM and Holland & Knight as its own. (DE 31 at 2). Contrary to Pharmacy Matters' assertion that FHM's and Pharmacy Matters' interests are aligned in this suit, BCBSF contends they are actually adverse, as Pharmacy Matters owes FHM money for the Factor treatment dispensed to Brown and Lowe. (*Id.*). Moreover, BCBSF argues that Pharmacy Matters has not shown that a conflict can be asserted, as the work performed by Holland & Knight for FHM was not the same or substantially related to any issues in this case, and the attorneys who performed the work for FHM have since left the firm. (*Id.*). Additionally, BCBSF argues that Pharmacy Matters has waived any ability to raise a motion to disqualify, as it has known of Holland & Knight's representation of BCBSF since at least June 2010, and waited unreasonably long to bring the instant Motion to Disqualify. (*Id.* at 3).

5

## A.     LEGAL STANDARD

"The disqualification of counsel is an extraordinary measure . . . [and a] court "must take care to preserve the delicate balance between a party's right to retain the counsel of his choice and the need to ensure adherence to the highest ethical standards for professional responsibility." *Gen. Cigar Holdings, Inc. v. Altadis, S.A.*, 144 F. Supp. 2d 1334, 1337 (S.D. Fla. 2001) (citations omitted).  For this reason, disqualifications must be granted sparingly, and motions to disqualify opposing counsel are highly disfavored in the Eleventh Circuit. *See Herrmann v. GutterGuard, Inc.*, 199 F. App'x 745, 752 (11th Cir. 2006) ("A motion to disqualify brought by opposing counsel should be viewed with caution . . . for it can be misused as a technique for harassment.'") (internal citations omitted); *Hernandez v. Royal Caribbean Cruises, Ltd.*, No. 10-21636-CIV, 2010 WL 3522210, *1 (S.D. Fla. Sept. 7, 2010) ("Disqualification of counsel is a drastic remedy and will not be granted lightly.").  To prevail on such a motion, a movant must show "compelling reasons" for disqualification. *Herrmann*, 199 F. App'x at 752 (citing *In re BellSouth Corp.*, 334 F.3d 941, 961 (11th Cir. 2003)).  This entails "clearly identify[ing] a specific Rule of Professional Conduct which is applicable to the relevant jurisdiction and [showing] that the attorney violated that rule." *Id.*

"The standards of professional conduct of the members practicing before this Court include the current Rules Regulating the Florida Bar." *Gen. Cigar Holdings, Inc.*, 144 F. Supp. 2d at 1338; *see* S.D. Fla. L.R. 11.1(c).  Conflicts of interest with former clients are governed by Rule 4-1.9 of the Florida Rules of Professional Conduct. *See Schulte v. Angus*, 14 So.3d 1279, 1281 (Fla. Dist. Ct. App. 2009) (stating that "Rule 4-1.9 governs conflicts between attorneys and former clients.").  Rule 4-1.9 provides, in relevant part:

A lawyer who has formerly represented a client in a matter shall not thereafter:

(a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent;

(b) use information relating to the representation to the disadvantage of the former client except as rule 4-1.6 would permit with respect to a client or when the information has become generally known.

Fla. R. Prof'l Conduct 4-1.9. "In order to prevail in a motion to disqualify under Rule 4-1.9, the movant must establish: 1.) the existence of a prior attorney/client relationship with the movant; and 2.) that the matters in the pending suit are substantially related to the previous matter or cause of action." *Bochese v. Town of Ponce Inlet*, 267 F. Supp. 2d 1240, 1244 (M.D. Fla. 2003).

## B.   DEFENDANT'S MOTION TO STRIKE

As a preliminary matter, I must address BCBSF's Motion to Strike (DE 35).   In support of its Motion to Disqualify, Pharmacy Matters filed the Declaration of Jarrett Bostwick ("Bostwick") (DE 27).  Bostwick, who is General Counsel and the Chief Executive Officer of FHM, reviewed the records, notes invoices, and other documents, for the work conducted by Holland & Knight for FHM between 2006 until June 3009.  BCBSF contends that Bostwick's Declaration contains improper testimony, and that the Declaration should be stricken and not considered by this Court when evaluating Pharmacy Matters' Motion to Disqualify.  (DE 35 at 4-6).  Alternatively, BCBSF argues that those portions of Bostwick's Declaration that contain hearsay, speculation, legal argument, and matters beyond Bostwick's personal knowledge, should be stricken from the Declaration.  (*Id.*).

Pharmacy Matters argues that BCBSF's Motion to Strike should be denied, as BCBSF's arguments rely on cases that evaluate the admissibility of affidavits in light of the

7

stringent standard found in Federal Rule of Civil Procedure 56(e), which governs motions for summary judgment and is inapplicable here. (DE 41 at 8). Moreover, Pharmacy Matters contends that Bostwick has personal knowledge of the statements set forth in the Declaration, and that BCBSF's objections to the presence of hearsay, speculation, and legal conclusions in the Declaration are meritless or insufficient to support a motion to strike. (*Id.* at 9-17). Pharmacy Matters states that if the Court were to find particular statements in Bostwick's Declaration inadmissible or otherwise improper, simple disregard, rather than striking, would be sufficient. (*Id.* at 7).

While I appreciate the distinction Pharmacy Matters seeks to draw between affidavits offered in support of motions for summary judgment as compared to those offered in other contexts, one thing is clear: a declaration or affidavit may only be considered to the extent that it is based on personal knowledge. *See* FED. R. EVID. 602 (witnesses may not testify to matters as to which they lack personal knowledge); *see also Martin v. Rumsfeld*, 137 F. App'x 324, 326 (11th Cir. 2005) (requiring personal knowledge in the summary judgment context); *HomeBingo Network, Inc. v. Chayevsky*, 428 F. Supp. 2d 1232, 1238 (S.D. Ala. 2006) (requiring personal knowledge in the context of a motion to dismiss). When a declarant avers that his statements are based on personal knowledge, however, a district court is "bound to accept [such] statements as true, unless the context demonstrate[s] otherwise." *Martin*, 137 F. App'x at 326. Here, Bostwick specifically states that he has personal knowledge of the statements included in his Declaration, and thus a motion to strike should not be granted on these grounds. To the extent his statements are speculative or hearsay, and go beyond the personal knowledge a corporate representative of FHM would have, this Court is well-capable of disregarding those statements when evaluating Pharmacy Matters' Motion to Disqualify. Further, I find that this approach sufficiently alleviates BCBSF's concerns about the legal arguments included in Bostwick's Declaration. The legal conclusions drawn

8

by Bostwick will not be substituted for this Court's own judicial analysis and, as another district court in this Circuit has aptly explained, the Court "is capable of separating the wheat from the chaff and will not credit improper [declaration] statements." *Hetrick v. Ideal Image Dev. Corp.*, No. 8:07-cv-871-T-33TBM, 2008 WL 5235131, at *8 (M.D. Fla. Dec. 13, 2008). Accordingly, while BCBSF's Motion to Strike is due to be denied, any statements in Bostwick's Declaration that violate the Federal Rules of Evidence or are otherwise improper will be disregarded by this Court.

## C.   ANALYSIS

Pharmacy Matters has not met its burden to show that the extraordinary measure of disqualification is warranted with respect to Holland & Knight in this matter. Regardless of whether Holland & Knight's prior representation of FHM could be imputed to Pharmacy Matters, Plaintiff has not established that the matters in this suit are substantially related to the legal advice Holland & Knight provided to FHM during the Audit. Accordingly, disqualification pursuant to Rule 4-1.9 cannot be justified.

According to Bostwick's Declaration, Holland & Knight represented FHM starting in 2006 when the Florida Board of Pharmacy alleged a pedigree violation by FHM. (Bostwick Decl. ¶ 13, May 11, 2011). As a result of this allegation, Holland & Knight comprehensively reviewed the business operations of FHM, and assessed FHM's compliance with Florida health care regulations. (*Id.* ¶ 14). The Audit was completed on May 23, 2007, and FHM has relied on the opinions rendered in this Audit in developing contractual relationships with other entities, including Pharmacy Matters. (*Id.*). Holland & Knight's review of its files and the firm's work on the FHM Audit, show that the review, and any documents that were provided to Holland & Knight to evaluate as part of that review, related only to assessing FHM's compliance with Florida pharmacy regulations, and not its overall, general business

9

operations. (Weiss Aff. ¶ 4, May 31, 2011).  The only review of distributor agreements

completed by Holland & Knight related to whether such agreements complied with Florida's

laws and regulations concerning wholesale pharmacies; there was no drafting of a standard

contract to be used for these agreements. (*Id.* ¶¶ 5-8).

> As used in Rule 4-1.9, the term "substantially related" is narrowly defined:
>
> Matters are "substantially related" for purposes of this rule if they involve the
> same transaction or legal dispute, or if the current matter would involve the
> lawyer attacking work that the lawyer performed for the former client. For
> example, a lawyer who has previously represented a client in securing
> environmental permits to build a shopping center would be precluded from
> representing neighbors seeking to oppose rezoning of the property on the
> basis of environmental considerations; however, the lawyer would not be
> precluded, on the grounds of substantial relationship, from defending a tenant
> of the completed shopping center in resisting eviction for nonpayment of rent.

Fla. R. Prof'l Conduct 4-1.9 cmt. (2006).  The issues in this case concern whether BCBSF

must pay the claims for Brown's and Lowe's Factor treatment pursuant to ERISA.  Clearly

this does not constitute the same transaction or legal dispute as Holland & Knight's

compliance Audit for FHM.  Thus, the only way in which Holland & Knight's representation

of FHM could be "substantially related" under Rule 4-1.9 is if this pending matter would

involve Holland & Knight attacking the work it did for FHM.  Beyond Plaintiff's conclusory

and speculative statements that the propriety of the Pharmacy Agreement will be at issue in

this case, there is nothing to suggest this it will be a part of this suit. *See Rhein Med. Inc. v.

Koehler*, No. 93-538-CIV-T-17, 1994 WL 383946, at *2 (M.D Fla. July 18, 1994) (finding

that "unsubstantiated speculation" as to potential counterclaims was insufficient to show the

instant suit was substantially related to an earlier one, and therefore no conflict of interest

could be established warranting disqualification of counsel).  Even if the Pharmacy

Agreement were to be addressed in this case, Holland & Knight had no involvement with the

drafting of the agreement between FHM and Pharmacy Matters.  The scope of Holland &

Knight's prior representation of FHM was limited to reviewing distributor agreements—

agreements that were *not* the Pharmacy Agreement—for compliance with Florida pharmacy regulations. Under the circumstances of this case, the validity of a contract is a distinct issue from whether the contract's individual terms comply with state regulations, and thus there is no basis to find that Holland & Knight would be attacking the work it performed for FHM. It is Pharmacy Matters' burden to establish the grounds for disqualification, *see In re BellSouth Corp.*, 334 F.3d 941, 961 (11th Cir. 2003), and it has failed to do so. Pharmacy Matters' Motion to Disqualify is denied.

### III.   Motion to Dismiss, Stay or Transfer

I turn next to BCBSF's Motion to Dismiss, Stay or Transfer. After considering the parties arguments, I find that a stay in this case is warranted.

A federal district court may dismiss or stay an action when there is an ongoing parallel action in state court, pursuant to the *Colorado River* doctrine of "exceptional circumstances." *Moorer v. Demopolis Waterworks & Sewer Bd.*, 374 F.3d 994, 997 (11th Cir. 2004). While federal courts have a "virtually unflagging obligation" to exercise the jurisdiction given them, and the general rule is that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction," *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976), there exist certain circumstances where abstention is appropriate. The principles underlying the *Colorado River* doctrine stem from "considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Id.* (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952)).

When determining whether exceptional circumstances exist to warrant abstention, a district court should first consider whether the federal and state suits are parallel; that is, they

must involve substantially the same parties litigating substantially the same issues. *Ambrosia Coal & Constr. Co. v. Pages Morales*, 368 F.3d 1320, 1330 (11th Cir. 2004). Next, the district court should analyze certain factors, including:

> (1) whether one of the courts has assumed jurisdiction over property, (2) the inconvenience of the federal forum, (3) the potential for piecemeal litigation, (4) the order in which the fora obtained jurisdiction, (5) whether state or federal law will be applied, and (6) the adequacy of the state court to protect the parties' rights.

*Id.* at 1331. Furthermore, the Supreme Court has explained that a district should evaluate "the vexatious or reactive nature of either the federal or the state litigation" in determining whether to defer to a parallel state litigation, and should consider whether the concurrent cases involve a federal statute that evinces a policy favoring abstention. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 17 n.2 (1983). While the inquiry favors the exercise of jurisdiction, a district court must consider the factors flexibly and pragmatically, and not as a "mechanical checklist." *Id* at 16. "The weight to be given to any one factor may vary greatly from case to case," *id.*, and "[n]o one factor is necessarily determinative," *Colorado River*, 424 U.S. at 818. A single factor, however, "can be the sole motivating reason for the abstention." *Moorer*, 374 F.3d at 997 (explaining that *Moses H. Cone* noted the desire to avoid piecemeal adjudication was the driving force behind the *Colorado River* abstention and dismissal).

Should a district court determine that abstention pursuant to the *Colorado River* doctrine is warranted, the Eleventh Circuit has held that "a stay, not a dismissal, is the proper procedural mechanism for a district court to employ when deferring to a parallel state-court proceeding[.]" *Id.* at 998 (quoting *LaDuke v. Burlington Northern R.R. Co.*, 879 F.2d 1556, 15561-62 (7th Cir. 1989)). "A stay is preferred because it lessens the concerns associated with statute of limitations, brings 'the federal action back before the same federal judge that had previously considered the case . . . [and] protects the rights of all the parties without

12

imposing any additional costs or burdens on the district court.'" *Id.* (quoting *LaDuke,* 879 F.2d at 1562).

As a threshold matter, I find that the proceeding initiated in this Court is parallel to the ongoing litigation in Iowa state court. Plaintiffs argue to the contrary, based on the fact that BCBSF, as well as Brown and Lowe, are not parties to the case pending in Iowa, and that the claims asserted in that suit are distinct from those asserted in this action. (DE 29-3 at 22). Identical parties, issues, and requests for relief, however, are not required for a proceeding to be considered "parallel" under the *Colorado River* doctrine. *Ambrosia Coal,* 368 F.3d at 1329-30. Instead, analysis under the doctrine applies "when federal and state proceedings involve substantially the same parties and substantially the same issues." *Id.* at 1330; *see also Lumen Constr., Inc. v. Brant Constr. Co., Inc.,* 780 F.2d 691, 695 (7th Cir. 1985) (explaining that, as is the case here, the fact that two plaintiffs and one defendant in the federal suit were not parties to state suit did not preclude the federal court from abstaining pending outcome of the state suit).

In the Iowa case, Pharmacy Matters seeks a declaratory judgment that Wellmark must pay the claims submitted to them by Pharmacy Matters in accordance with their agreement, and damages in the amount of more than $6.6 million against Wellmark, based on a breach of contract claim under Iowa law.  (*See* Am. Compl. in Case No. LACV 070675 at 14-15, 17; DE 29-1 at 20-21, 23).  Though recast under various forms of relief here—including a wrongful denial of benefits under ERISA, declaratory and injunctive relief pursuant to ERISA, and violation of Florida state law—Plaintiffs' causes of action in this matter against BCBSF stem from the same outstanding payments for Factor treatment that are part and parcel to the $6.6 million claim for damages and request for declaratory judgment in the Iowa litigation. *See Dailey v. Nat'l Hockey League,* 987 F.2d 172, 174 (3d Cir. 1993) (finding parallel actions, and thus prompting *Princess Lida* analysis, where the claims asserted in the

action before the federal court were based primarily on ERISA, and the claims in the Canadian action were based on Canadian law, but review of the claims in both actions revealed allegations of the same wrongdoing and sought similar relief).

In their federal court complaint, Plaintiffs explain that BCBSF has violated ERISA by refusing to pay more than $548,000.00 in legitimate claims for Factor treatment submitted by Pharmacy Matters. Plaintiffs state that $82,363.50 results from one unpaid claim regarding Brown's Factor treatment (Invoice No. 14919), and $465,638.22 results from three unpaid claims regarding Lowe's Factor treatment (Invoice Nos. 14887, 15220 & 15293). (*See* Compl. ¶ 13). Review of the amended complaint in the Iowa case shows that these same unpaid invoices are included in Pharmacy Matters' list of claims it timely submitted to Wellmark pursuant to their agreement, and for which Wellmark has refused to pay. (*See* Am. Compl. in Case No. LACV 070675, Ex. D; DE 29-1 at 79). These claims form the basis of Pharmacy Matters' breach of contract allegation in the Iowa case, and there is a substantial likelihood that resolution of this matter could dispose of the claims raised in this federal action. *See TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 592 (7th Cir. 2005) (explaining that the question to be asked when a court analyzes whether a state suit and a federal suit are parallel is whether there is a substantial likelihood that the litigation in state court will dispose of all claims presented in the federal case). The cases are not "wholly unrelated" such that the litigants are precluded from invoking abstention under *Colorado River*, *see Ambrosia Coal*, 368 F.3d at 1330, and instead, "the similarity between the two cases is sufficient to justify the conclusion that the 'state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issue between the parties.'" *Lumen Constr., Inc.*, 780 F.2d at 695-96 (quoting *Moses H. Cone*, 460 U.S. at 28)). Accordingly, I find that the Iowa litigation and the instant action now pending before this Court are parallel proceedings under the *Colorado River* doctrine.

14

Upon consideration of the *Colorado River* factors, I find that exceptional circumstances exist to warrant abstention in this case. First, the Iowa case began on May 1, 2009, almost two years prior to when Plaintiffs filed suit in federal court. While it is clear that the Iowa state court obtained jurisdiction prior to this Court, the Supreme Court has clarified that this factor "should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone*, 460 U.S. at 21. The parties have not been strangers to this Court's docket over the last several months, but this case is in its infancy—and this is particularly so when compared to the advanced stage of the litigation in the Iowa case. Beyond asserting various affirmative defenses and counterclaims, counsel for Wellmark in the Iowa litigation explains that the Iowa state court has held a preliminary injunction hearing and issued an order on July 10, 2009, denying the injunction. (Collins Aff. ¶ 8, May 9, 2011). Additionally, there have been in excess of 160 filings in the Iowa case, multiple hearings and discovery orders, and the parties have exchanged more than 16,000 documents consisting of 44,000 pages. (*Id.* ¶ 9). Fifteen depositions have been taken in seven different states, including a July 19, 2010 deposition of a corporate representative for BCBSF concerning, in part, Brown's and Lowe's claims for payment. (*Id.* ¶ 10). In this proceeding, according to the Pretrial Scheduling Order, the deadline for amended pleadings and the joinder of parties passed only recently, (*see* DE 19 at 7), and thus discovery is only just beginning. It is clear that chronologically and substantively the state suit is running well ahead of the federal suit in this matter, and thus this factor favors abstention. *See Sides v. Simmons*, No. 07-cv-80347, 2007 WL 3344405, at *4 (S.D. Fla. Nov. 7, 2007) (finding same).

Furthermore, forum shopping is a significant concern in a case such as this, where considerable discovery has already taken place in the state proceeding and a plaintiff common to both the state and federal suit seeks a second bite of the apple in federal court.

15

To the extent Plaintiffs' claims have always involved allegations of ERISA violations—which this Court believes they have—Pharmacy Matters could have styled its Complaint to include these claims, and initially filed its case in federal court pursuant to federal question subject matter jurisdiction under 28 U.S.C. § 1331. Instead, Plaintiff voluntarily chose state court as the forum in which to resolve its claims for unpaid Factor treatments, and now seeks relief in federal courts only after significant development in the Iowa case. This history "creates the impression that Plaintiff filed its federal action in pursuit of a more sympathetic forum. Such behavior strains the federal policy against plaintiff removal and forum shopping, and [cannot be tolerated]." *Allied Mach. Serv., Inc. v. Caterpillar Inc.*, 841 F. Supp. 406, 410 (S.D. Fla. 1993). As a sister court has explained,

> to permit both state and federal suits to go forward would lead to forum shopping by encouraging Plaintiff to simply choose a second court if he becomes unhappy with the first. Deferring jurisdiction to the court where the case was first filed protects the neutrality of the federal system and is consistent with long-standing judicial notions of issue and claim preclusion. It would be illogical to give full faith and credit to the judgments of other courts while encouraging a race to judgment by permitting two suits involving substantially the same parties and issues to go forward.

*Sides*, 2007 WL 3344405, at *4 (citation omitted). Cognizant of the strong federal policy against forum shopping, I find that this factor weighs heavily in favor of a stay.

Furthermore, the potential for piecemeal litigation in this matter cannot be denied. Plaintiffs argue that this is not so, because the federal and state law causes of action in this proceeding are distinct from those asserted in the Iowa case, the remedies sought are different, and the parties are do not align. (DE 29-3 at 24). There is no requirement, however, that the parties or issues be identical in order for a stay under the *Colorado River* doctrine to be permissible. This is simply too high of a hurdle, because "only litigants bereft of imagination would ever face the possibility of an unwanted abstention order, as virtually all cases could be framed to include additional issues or parties." *Ambrosia Coal*, 368 F.3d at

16

1330. Moreover, the distinctions Plaintiffs' highlight are not as drastic as they claim. The heart of this dispute in both the Iowa case and in this proceeding is the same: the outstanding payments for Factor treatment. Whether pursued as a breach of contract claim, or as an ERISA claim, the facts underlying the sought-after relief in both the state and federal cases are indistinguishable. As a result, should this Court decline to abstain in this matter, "there exists a strong likelihood that it will duplicate the efforts of the state court and possibly reach different factual—and consequently legal—conclusions on the same exact set of facts." *Allied Mach. Serv., Inc.*, 841 F. Supp. at 408. This is precisely the scenario that abstention under the *Colorado River* doctrine is meant to avoid.

As explained before, it is likely that a decision in the Iowa case may resolve the issues pending in this matter. Should the Iowa court find that Wellmark has breached its contract and that Plaintiffs are entitled to the roughly $6.6 million in damages they seek, Brown's, Lowe's, and Pharmacy Matters' ERISA claims in this suit will be moot. When such an outcome is possible, contemporaneous exercise of concurrent jurisdiction—requiring duplicate discovery efforts, trials, and resolutions of the issues—does not serve the interests of "wise judicial administration," as it fails to conserve judicial resources or value comprehensive disposition of the litigation. *Colorado River*, 424 U.S. at 817. Even if the resolution of the Iowa case does not dispose of this suit, it will most likely narrow the issues, making abstention appropriate. *See Allied Mach. Serv., Inc.*, 841 F. Supp. at 408 (noting that even if the resolution of the state case did not dispose of the federal claim, abstention meant that the federal court "would still be avoiding the kind of wasteful, duplicative adjudication the abstention doctrine was created to prevent"). Accordingly, the interest in avoiding piecemeal litigation strongly favors a stay in this case.

The remaining factors do little to guide whether abstention is appropriate. First, neither this Court nor the Iowa Court has assumed jurisdiction over any "property." Though

BCBSF asserts that the Iowa Court's assumption of jurisdiction over the parties' claims in that case falls within the scope of the first factor, this is incorrect. *See Ambrosia Coal*, 368 F.3d at 1332 (explaining that actions primarily seeking money damages on a breach of contract claim and equitable rescission of a contract do not constitute a proceeding *in rem*, and do not fall within the scope of the term "property" as referenced by the Supreme Court in *Colorado River*). Absent evidence that either court has assumed jurisdiction over property, the first factor adds little to the analysis. *See Noonan South, Inc. v. Volusia County*, 841 F.2d 380, 382 (11th Cir. 1988) (under the same circumstances, finding the first factor "inapplicable"); *Sides*, 2007 WL 3344405, at *3 (same, finding the first factor of "little guidance"); *Allied Mach. Serv., Inc.* 841 F. Supp at 508 (same, finding the first factor "unhelpful"). *But see Ambrosia Coal*, 368 F.3d at 1332 (same, finding the first factor did not weigh in favor of abstention).

When evaluating the inconvenience of the federal forum, the focus of the inquiry should be "primarily on the physical proximity of the federal forum to the evidence and witnesses." *Ambrosia Coal*, 368 F.3d 1332. BCBSF argues that, pursuant to the Wellmark contract, Pharmacy Matters is required to submit all claims for payment to Wellmark in Iowa, and that this in fact occurred with Brown's and Lowe's claims. (DE 21 at 14).   The implication of BCBSF's argument is that all the evidence and witnesses related to Wellmark's administration of these claims—which are essential to resolving the disputed issues in this suit—are located in Iowa, thus making the federal forum in the Southern District of Florida highly inconvenient.   BCBSF does indicate, however, that its own potential witnesses are located in the Middle District of Florida. (*Id.* at 19).   In response, Plaintiffs focus on the location of the parties, explaining that Pharmacy Matters is the only party located in Iowa, while BCBSF and Brown are both located in Florida. (DE 29-3 at 23-24).   Plaintiffs' later add, however, that the vast majority of their files relating to Brown's

18

and Lowe's claims are located in Boca Raton, Florida. (*Id.* at 28). Based on these facts, I find that the inconvenience of the chosen federal forum is comparable to that of the Iowa Court. There is no doubt that Brown's and Lowe's files, and BCBSF's witnesses, suggest that Florida is the more convenient location. Nevertheless, should this Court decline to stay the proceedings, evidence and witnesses pertaining to Wellmark's administration of the outstanding claims would be a significant part of the litigation—all of which are located in Iowa. Thus the evidence and witnesses in this matter are equally inconvenient to both fora, and this factor does little to guide the Court in determining whether an abstention is warranted.

While at first blush it appears that the fifth factor weighs against a stay, this factor likewise does little to illuminate whether abstention is appropriate, and particularly so in light of consideration of the sixth factor. As the issues are framed before this Court, three of Plaintiffs' claims are governed by federal law, specifically ERISA. The contract between Pharmacy Matters and Wellmark, however, will necessarily be a part of this suit—perhaps a dispositive part of this suit—and analysis of the agreement will be governed by state law. Plaintiffs argue that its federal claims and Florida state law claim counsel in favor of this Court retaining its jurisdiction. But the fact that a Florida state law claim is part of the federal proceedings is immaterial, as the "question for [abstention] purposes is not which state law applies, but rather whether federal or state law applies." *Ambrosia Coal*, 368 F.3d at 1334. Here, the conclusion must be that "this case travels on both state and federal law." *Id.* "The involvement of federal law ordinarily weighs heavily in favor of the federal court exercising jurisdiction. However, if federal and state courts have concurrent jurisdiction over a claim, this applicable law factor becomes less significant." *Bosdorf v. Beach*, 79 F. Supp. 2d 1337, 1345 (S.D. Fla. 1999) (citing *Moses H. Cone*, 460 U.S. at 25-26) (citation omitted).

As previously explained, whether styled as a breach of contract claim or as an ERISA violation, the factual basis of Plaintiffs' claims is the same, and the same remedy is sought in the Iowa case as in this suit: namely, the $548,000.00 in outstanding payments for Brown's and Lowe's factor treatment.   Plaintiffs claim that the Iowa state court proceeding is inadequate, as the rights conferred on them by ERISA are within the exclusive jurisdiction of the federal courts. (DE 29-3 at 25). This is incorrect.  ERISA specifically provides that state and district courts of the United States have concurrent jurisdiction over actions by a plan participant "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. §§ 1332(a)(1)(B), 1332(e)(1).

While injunctive relief under ERISA, 29 U.S.C. § 1332(a)(3), lies within the exclusive jurisdiction of federal district courts, *see* 29 U.S.C. § 1332(e)(1), the Supreme Court has referred to this provision as a "catchall" that acts "as a safety net, offering appropriate equitable relief for injuries caused by violations that [§ 1132] does not elsewhere adequately remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996).   Relying on this statement, the Eleventh Circuit has held that an ERISA plaintiff with an "adequate remedy" under § 1132(a)(1)(B) cannot alternatively plead and proceed under § 1132(a)(3).  *Katz v. Comprehensive Plan of Group Ins.*, 197 F.3d 1084, 1088-89 (11th Cir. 1999).   Here, Plaintiffs are not faced with circumstances that force them to rely on § 1132(a)(3) or have no remedy at all.  *Cf. Varity Corp.*, 516 U.S. at 515 (permitting recovery under § 1132(a)(3) when the plaintiffs could not proceed under other subsections of § 1132).  Instead, the relief they seek under § 1132(a)(3) is not substantively different from the declaratory relief and unpaid benefits they seek under § 1132(a)(1)(B), and thus there is adequate remedy within the more specific provisions of § 1132, barring recovery under § 1132(a)(3). *See Ogden v. Blue Bell Creameries U.S.A., Inc.*, 348 F.3d 1284, 1287 (11th Cir. 2003); *Katz*, 197 F.3d at

1088-89; *accord Larocca v. Borden, Inc.*, 276 F.3d 22, 28 (1st Cir. 2002) ("[Following *Varity*], federal courts have uniformly concluded that, if a plaintiff can pursue benefits under the plan pursuant to Section a(1), there is an adequate remedy under the plan which bars a further remedy under Section a(3)"). Plaintiffs' claims for ERISA benefits and declaratory relief are not committed to the exclusive jurisdiction of federal courts and, because Plaintiffs' claims for breach of contract and declaratory judgment in the Iowa case seek analogous relief on indistinguishable facts, I find that the state court proceeding adequately protects the parties rights. However, because this sixth factor "only weigh[s] in favor or against abstention when one of the fora is inadequate to protect a party's rights," *Ambrosia Coal*, 368 F.3d at 1334, this factor adds little to the analysis.

Finally, review of the final policy considerations suggests abstention is appropriate in this matter. While BCBSF has not shown that Plaintiffs' filing of this suit in federal court is "vexatious" in nature, I am keenly aware of the threat of forum shopping posed by Plaintiffs' two-year delay in bringing these claims before this Court. Reactive or not, this is not a practice to be encouraged, and accordingly this factor counsels in favor of abstention. Moreover, while ERISA does not evince a policy favoring abstention *per se*, "ERISA was enacted, in part at least, to provide a uniform and systematic framework for regulation of employee benefit plans." *Gen. Motors Corp. v. Buha*, 623 F.2d 455, 459 (6th Cir. 1980). In an effort to reach uniform and cohesive results, piecemeal resolution of ERISA claims that could lead to inconsistent findings and legal conclusions should be avoided. Under the circumstances of this case, I find that this consideration favors abstention.

The *Colorado River* factors are "to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand." *Moses H. Cone*, 460 U.S. at 21. Having considered the factors, both individually and collectively, I find that exceptional circumstances exist to

21

warrant abstention under the *Colorado River* doctrine. Accordingly, this Court will stay its hand and defer to the parallel proceedings in the Iowa state court.

## IV.   CONCLUSION

For the reasons provided above, it is hereby **ORDERED AND ADJUDGED** as follows:

1) Defendant's Motion to Strike Declaration of Jarrett Bostwick (DE 35) is **DENIED;**

2) Motion of Plaintiff T. Zenon Pharmaceuticals, LLC d/b/a Pharmacy Matters to Disqualify Holland & Knight LLP (DE 27) is **DENIED;**

3) Defendant Blue Cross and Blue Shield of Florida, Inc.'s Motion to Dismiss, or in the Alternative, to Stay or Transfer (DE 21) is **GRANTED IN PART.** This action is **STAYED** pending the outcome of the parallel Iowa State Court case (Case No. LACV 070675). Plaintiffs may move to reopen this case within thirty (30) days of the conclusion the Iowa State Court case. The Clerk of Court shall **CLOSE** this case for administrative purposes, and all pending motions and requests for hearings are **DENIED AS MOOT.**

**DONE AND ORDERED** in Chambers in West Palm Beach, Florida, this _8_ day of August, 2011.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

Copies to:    Counsel of Record

22