IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILLIAM GRIFFIS** | ) | CIVIL ACTION NO.   11-263 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **HIGHMARK BLUE CROSS BLUE** | ) | |
| **SHIELD OF PENNSYLVANIA**, | ) | |
| | ) | |
| Defendant, | ) | |

## MEMORANDUM OPINION AND ORDER

CONTI, District Judge.

### INTRODUCTION

In this case,  plaintiffs William Griffis ("Griffis") and T. Zenon Pharmaceuticals, doing

business as Pharmacy Matters ("Pharmacy Matters," and together with Griffis, "plaintiffs"),

asserted claims against defendant Highmark Blue Cross Blue Shield of Pennsylvania

("Highmark") under the Employee Retirement and Security Income Act of 1974 ("ERISA"), 29

U.S.C. §§ 1132 *et seq.*, for (1) wrongful denial of benefits; (2) declaratory relief; (3) injunctive

relief; and (4) unlawful delay of benefit payments pursuant to the Pennsylvania Quality Health

Care Accountability and Protection Act (the "Health Care Act"), 40 PA. CONS. STAT. §§

991.2101 *et seq.*   After the court ordered the parties to determine if it was possible to conduct an

administrative review of plaintiffs' claim, the parties reported to the court that the self-funded

plan maintained by Penske Truck Company ("Penske") had paid the full amount of the allegedly

wrongfully withheld ERISA benefits.[1]   Pharmacy Matters voluntarily withdrew from the

litigation.  Now pending before the court are Griffis's motion for attorney fees (ECF No. 39) and

Highmark's renewed motion to dismiss (ECF No. 37).  For the reasons stated below, the court

will GRANT the renewed motion to dismiss, but will delay ruling on the motion for attorney fees

in order for the parties to conduct limited discovery.


*BACKGROUND*

The following facts are taken from the complaint filed in this case.  They are recited only

for the purpose of providing background information and are not admitted by Highmark. This

background does not reflect any findings of fact by the court.

In February 2007, Griffis signed a "Service Agreement/Assignment of Benefits" which

arguably assigned Griffis's rights to reimbursement and collection under his insurance policy to

Factor Health Management, LLC ("FHM") in exchange for health services rendered.[2]  (Service

Agreement/Assignment of Benefits (ECF No. 1-2) at 1.)  FHM and Pharmacy Matters are

affiliated by contract.  (Compl. (ECF No. 1) ¶ 7.)

In 2008, Highmark issued a medical insurance policy to Griffis which was effective

during all times relevant to the case, from October to December 2008.  (Id. ¶ 13.)  Griffis suffers

from hemophilia, a life-threatening disease that requires expensive blood-clotting factor

treatment.  (Id. ¶ 6.)  Under the policy, Griffis was permitted to obtain covered services from

participating providers and nonparticipating providers and receive reimbursement from

---

[1] Neither the plan nor Penske is a party to this lawsuit.

[2] The legal effect of this document was central to this litigation before Pharmacy Matters's
voluntary withdrawal, as it impacted whether Pharmacy Matters had standing under ERISA.  The
court offers no opinion on the legal effect of the document.

Highmark.[3]  (Id. ¶ 13.)  Plaintiffs filed this action against Highmark for allegedly refusing to pay

Pharmacy Matters in excess of $330,318.00 in benefit claims submitted between October and

December 2008.

During a hearing on Highmark's motion to stay (ECF No. 23) and first motion to dismiss

(ECF No. 8), held on July 26, 2011, the court requested the parties inquire about the viability of

conducting an administrative review of the claims underlying the case.  Following review, the

court was informed that the benefits allegedly wrongfully not paid were paid in full by Penske.

*STANDARD OF REVIEW*

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a court must dismiss a

matter if it lacks subject-matter jurisdiction over the complaint.  FED. R. CIV. P 12(b)(1).

Challenges to subject-matter jurisdiction under Rule 12(b)(1) may be facial or factual in form.

Gould Elec. Inc.v. United States, 220 F.3d 169, 176 (3d Cir. 2000); Mortensen v. First Fed. Sav.

and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). A facial challenge attacks the complaint on

its face and requires the court to consider only the complaint's allegations and to do so in the

light most favorable to the plaintiff. Mortensen, 549 F.2d at 891. A factual challenge contests

the existence of subject-matter jurisdiction, apart from any pleadings. Id.  In reviewing a factual

challenge, the court "is free to weigh the evidence and satisfy itself as to the existence of its

power to hear the case," even where disputed material facts exist. Id. In a factual challenge, the

plaintiff has the burden of persuasion to show that jurisdiction exists. Id.; Gould, 220 F.3d at

178.

_____

[3] Pharmacy Matters provided covered services to Griffis and submitted insurance claims to
Wellmark, Inc., which, in turn, would submit claims to Highmark.  (Id.)  Both Highmark and
Wellmark, Inc. are Blue Cross Blue Shield affiliates.

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002).  While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  A "formulaic recitation of the elements of a cause of action will not do." Id. (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).  "Factual allegations must be enough to raise a right to relief above the speculative level" and "sufficient to state a claim for relief that is plausible on its face." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 556).

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . . Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Id. at 1949 (quoting Twombly, 550 U.S. at 556) (internal citations omitted).

Two working principles underlie Twombly.  Id.  First, with respect to mere conclusory statements, a court need not accept as true all the allegations contained in a complaint. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. (citing Twombly, 550 U.S. at 555.)  Second, to survive a motion

to dismiss, a claim must state a plausible claim for relief.  <u>Id.</u> at 1950.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  <u>Id.</u> (citing 490 F.3d at 157-58).  "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n] - that the pleader is entitled to relief.'"  <u>Id.</u> (quoting FED. R. CIV. P. 8(a)(2)).  A court considering a motion to dismiss may begin by identifying pleadings that are not entitled to the assumption of truth because they are mere conclusions. "While legal conclusions can provide the framework of the complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." <u>Id.</u>

Generally, if "matters outside the pleadings are presented to and not excluded by the court" a motion to dismiss must be treated as a motion for summary judgment.  FED R. CIV. P. 12(d).  There are several narrow exceptions to this general rule.  First, a court is permitted to consider documents "integral to or explicitly relied upon in the complaint" in ruling on a motion to dismiss.  <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1426 (3d Cir. 1997). "Plaintiffs cannot prevent a court from looking at the texts of the documents on which [their] claim is based by failing to attach or explicitly cite them."  <u>Id.</u>  Second, the court may rely on "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  <u>Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993).  Third, the court may rely on public records (if undisputed) such as criminal case dispositions, letter decisions of government agencies and published reports of administrative bodies.  <u>Id.</u> at 1197.  The rationale behind these

exceptions is that the plaintiff is already on notice of the documents in these situations, and as

such is not prejudiced by their consideration on a motion to dismiss.  See U.S. Land Res. v. JDI

Realty, LLC, Civil Action No. 08-5162, 2009 WL 2488316, at *4 (D.N.J. Aug. 12, 2009).


*THE MOTION TO DISMISS*

The complaint contains four counts: (I) wrongful denial of benefits under ERISA; (II)

declaratory relief; (III) injunctive relief; and (IV) enforcement of the Health Care Act.  In its

renewed motion to dismiss, Highmark argues that:  (1) counts I through III are moot as a result

of the payment of benefits by Penske; (2) counts I through III should be dismissed for lack of

standing because there is no injury-in-fact; (3) the claims for declaratory and injuctive relief

should be dismissed because there are no allegations of a likelihood of future harm (and

therefore standing) and because Griffis has full and adequate relief under ERISA §

1132(a)(1)(B)[4]; (4) counts I through III should be dismissed because Highmark is not the proper

defendant to the claims; and (5) count IV should be dismissed because there is no private cause

of action under the relevant state law, and alternatively because the state law at issue is

preempted by ERISA.  With respect to the mootness argument, Griffis argues that the complaint

is not moot because it contains claims for attorney fees, prejudgment interest and injunctive and

declaratory relief.  The court considered these arguments at a hearing on February 1, 2012, and

issued a preliminary assessment of the motion to dismiss.  This memorandum will consider the

state law claim set forth in count IV before assessing the mootness of the ERISA claims.

As a preliminary matter, the court must dismiss count IV for failure to state a claim

because this court predicts the Supreme Court of Pennsylvania would not find that there is a

---

[4] This argument will not be addressed by the court because the other arguments are dispositive.

private cause of action for delayed benefits payments under the Health Care Act.  In Solomon v. U.S. Healthcare Systems of Pa., Inc., 797 A.2d 346 (Pa. Super. Ct. 2002), the Pennsylvania Superior Court held that "no private cause of action exists for enforcing the prompt payment provision of the Health Care Act."  Solomon, 797 A.2d at 352-53.  Griffis relies on the decision in Grider v. Keystone Health Plan Central, Inc., No. CIV.A.2001–CV–05641, 2003 WL 22182905 (E.D. Pa. Sept. 18, 2003), which held that health care providers may bring suit under the Health Care Act.[5]  A later decision, however, by a different district court in the Eastern District of Pennsylvania followed the Solomon holding.  Templin v. Independence Blue Cross, No. 09-4092 (E.D. Pa. Feb. 14, 2011) (available on PACER).

The court, when construing state law, is bound by the state's highest court.  None of the decisions relied upon by the parties are binding authority.  The court is required to predict how the Pennsylvania Supreme Court would rule on the issue.   The Templin and Solomon decisions persuade the court that the Pennsylvania Supreme Court would rule that there is no private right of action to enforce the Health Care Act.  Because Griffis does not have a private right of action to enforce the Health Care Act, count IV must be dismissed.

All three remaining counts, after dismissal of count IV, relate to the allegedly wrongful denial of ERISA benefits.   All three counts are rendered moot by the payment of the disputed claims.  Pakovich v. Verizon LTD Plan, 653 F.3d 488, 492 (7th Cir. 2011) ("We conclude that [plaintiff's] benefit claim became moot when the Plan paid it in full, but that the district court

---

[5] The district court in Grider specifically relied upon the fact that the plaintiffs in that case "as health care providers [were] clearly members of the class for whose benefit the statute was enacted," Grider, 2003 WL 22182905, at * 29, which is one of the three factors it considered in determining there was a private right of action to enforce the statute.  Id. at *28-32.  Here, the remaining plaintiff is an individual—not a healthcare provider—and Grider's analysis cannot be extended to the facts in this case.  Even if the reasoning in Grider were adopted here, Griffis would not have a private cause of action under the Health Care Act because he is not a member of the class described in Grider.

retained equitable jurisdiction to adjudicate her fee claim."); Templin v. Independence Blue Cross, No. 09-4092, 2011 WL 1870182, at *5 (E.D. Pa. May 13, 2011) (holding payment of disputed claims renders a wrongful denial of benefits claim moot).

Article III of the United States Constitution limits the "judicial Power of the United States" to adjudication of "Cases" or "Controversies." U.S. CONST. art. III, § 2. The court enforces the case-or-controversy requirement through several justiciability doctrines, which include standing, mootness, ripeness, the political question doctrine, and the prohibition on advisory opinions. See Pittsburgh Mack Sales & Serv., Inc. v. Int'l Union of Operating Eng'rs, Local Union No. 66, 580 F.3d 185, 190 (3d Cir. 2009). The Court of Appeals for the Third Circuit has explained:

> Standing inquires whether someone is the proper party to bring a lawsuit at the beginning of the case. The three elements necessary to establish the irreducible constitutional minimum of standing are: (1) the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) there is a causal connection between the injury and the conduct complained of; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.
>
> Mootness has been described as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue through its existence (mootness). A central question in determining mootness is whether a change in the circumstances since the beginning of the litigation precludes any occasion for meaningful relief.

Bass v. Butler, 238 F. App'x 773, 776-77 (3d Cir. 2007) (citations and quotations omitted).

In this case, when Highmark's initial motion to dismiss (ECF No. 8) alleged Griffis did not have standing under ERISA, Griffis proffered a basis for standing.[6] He first argued that he

---

[6] That motion to dismiss was dismissed without prejudice to allow the parties to determine whether administrative review could be conducted. The court did not rule on the substance of the standing issue. In resolving the issues raised and discussed in this memorandum opinion, the court will assume Griffis had standing upon the commencement of the suit.

remained obligated to pay outstanding medical expenses to Pharmacy Matters which were not paid for by his insurance.[7] (Mem.Opp'n Mot. Dismiss (ECF No. 12) at 12.)  He also argued that the "failure to pay these claims will seriously jeopardize the ability of Mr. Griffis to obtain health care services and products from pharmacies of his choice, which, given the specialized nature of hemophilia, is a serious, tangible harm."  (Id.)

Neither of Griffis's proffered bases for standing, assuming they were valid upon the commencement of the suit, can survive the payment of the benefits to Pharmacy Matters.  Griffis is no longer potentially at risk of liability for having to pay Pharmacy Matters for the medication he received and for which Pharmacy Matters billed Highmark.  The entire amount of those benefits has been paid by Penske.   Griffis's second standing argument is likewise vitiated by payment of the benefits because it is rooted in the "failure to pay these claims."  Such failure to pay was arguably concrete and imminent at the commencement of this suit, but is rendered hypothetical or conjectural by the payment of the benefits by Penske.

For these reasons, and following the reasoning of the courts in Pakovich, 653 F.3d at 492, and Templin, 2011 WL 1870182, at *5, the court concludes Counts I through III of the complaint

---

[7] Specifically, the assignment provides:

> I understand that I am responsible for and will pay in full the portion of my bill not covered by insurance companies, governmental agencies or third party payors, including, but not limited to, any applicable co-payments, share of cost payments, deductibles, denials and charges for services not covered by my insurance company, a governmental agency or third party payor, such as charges for services that are determined by such entity not to be medically necessary or not covered under the terms of my health plan.  In consideration of services to be provided, I agree to pay FHM and FCS in accordance with the regular rates and terms of each applicable provider.  Should the account be referred to an attorney or collection agency for collection, I agree to pay reasonable attorney's fees and collection expenses.

(Service Agreement/Assignment of Benefits (ECF No. 1-2) at 1.)

are moot because the entire amount of Griffis's withheld benefits have now been paid.[8]

## CONCLUSION

Because there is no private cause of action under the Health Care Act, the court must dismiss count IV for failure to state a claim; because all remaining claims in the complaint are moot, the court must dismiss this action for lack of subject-matter jurisdiction.  The court retains jurisdiction to entertain Griffis's motion for attorney fees at a later date, Pakovich, 653 F.3d at 492, following limited discovery.

## ORDER

AND NOW, this 10th day of February, 2012, upon consideration of the parties' filings and for the reasons set forth below, it is hereby ORDERED that defendant's motion to dismiss (ECF No. 37) is GRANTED.

IT IS FURTHER ORDERED that the clerk of court shall mark this case closed.

IT IS FURTHER ORDERED that the court shall retain jurisdiction to resolve the

---

[8]  Plaintiff's claims for attorney fees and costs cannot defeat this mootness determination.  See Lewis v. Cont'l Bank Corp., 494 U.S. 472, 480 (1990) (holding that "interest in attorney's fees is . . . insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim").  Plaintiff's claim for pre-judgment interest cannot defeat mootness because there has been no judgment in this case.  To the extent the prejudgment interest claim could be brought as an independent claim for delayed interest payment under Fotta v. Trustees of the UMW Health & Retirement Fund of 1974, 165 F.3d 209, 213 (3d Cir. 1998), it would fail to state a claim.  In Fotta, the court of appeals emphasized that "the concerns animating" permitting interest in ERISA cases (as an independent cause of action or otherwise) are to prevent unjust enrichment to the plan or to make the claimant completely whole by providing interest to account for the time value of the claimant's money.  Id. at 211-13.  Here, there was no unjust enrichment of Highmark—because the plan is self-funded by Penske and any interest earned on benefits withheld would enrich the plan or Penske and not Highmark—and no failure to make plaintiff whole. Plaintiff received his medications and did not have to pay for them.  In other words, he did not lose money to which he was entitled, and thus could not have a claim for the time value of money.

collateral issue of attorney fees and costs.

By the court,

 /s/ Joy Flowers Conti

Joy Flowers Conti
United States District Judge